IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 1:85-cr-00106-MLG

TEODORO TORRES-MENDOZA,

    Defendant.

**MEMORANDUM OPINION AND ORDER
<u>DENYING DEFENDANT'S WRIT OF CORAM NOBIS</u>**

Teodoro Torres-Mendoza seeks a writ of coram nobis vacating his 1985 conviction for possession with intent to distribute 130 pounds of marijuana. Doc. 15 at 1-2; Doc. 15-1 at 17-18, 34-35. The United States opposes his request arguing that Torres-Mendoza has failed to make the necessary showing entitling him to such relief. *See generally* Doc. 22. After reviewing the parties' submissions and the applicable law, the Court agrees with the Government. The Court's reasoning follows below.

**BACKGROUND**

On April 29, 1985, Torres-Mendoza attempted to enter the United States from Mexico at a port of entry near Columbus, New Mexico. Doc. 15-1 at 1-2, 19. United States Customs officials searched Torres-Mendoza's vehicle and discovered a hidden compartment in which approximately 130 pounds of marijuana had been concealed. *Id.* at 1. He was arrested on the spot. *See id.* at 1, 4-5. Though Torres-Mendoza maintained he was unaware of the drugs in his van, he ultimately plead guilty to possession with intent to distribute marijuana contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (1984). *Id.* at 17-18.

1

Mario Esparza represented Torres-Mendoza at his arraignment and the subsequent criminal proceedings. *Id.* at 3; Doc. 22-1 at 2 ¶ 10. Esparza's timekeeping records demonstrate that prior to the plea hearing he spent an hour and a half reviewing the discovery, the indictment, and otherwise conducting research for the case. Doc. 15-1 at 23. Other than a request to set bond, *id.* at 4-5, Esparza did not file any pre-trial motions. *See id.* at 11-13.

At sentencing, Judge Juan G. Burciaga sentenced Torres-Mendoza to three years in prison followed by a special parole term of three years. *Id.* at 34-35, 37. He served just over a year in custody and was released from prison in 1986. Doc. 22 at 7 (citing Inmate Locator, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 23, 2025) [https://perma.cc/P2DQ-777E]).

Afterwards, Torres-Mendoza and his wife became foster parents of a young boy in December 1995. Doc. 25-1 at 3 ¶¶ 13-14. They adopted their son three years later. *Id*. After his son turned eighteen in 2013, Torres-Mendoza began conferring with immigration attorneys about obtaining lawful permanent residency with the goal of becoming a naturalized citizen. *Id.* ¶ 16; Doc. 25 at 11-12. Torres-Mendoza asserts that "none of the immigration lawyers with whom [he] consulted advised him to seek post-conviction relief regarding this case." Doc. 25 at 12. It was only after his wife was referred to counsel in this matter that Torres-Mendoza opted to "pursue relief from this conviction, which was standing in the way of his becoming a lawful permanent resident and eventually becoming a naturalized [United States] citizen." *Id.*; *see* Doc. 25-1 at 3 ¶ 16. Now—forty years after the fact—Torres-Mendoza seeks a writ of coram nobis vacating his conviction. *See generally* Docs. 15, 25.

**DISCUSSION**

"A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer in custody and therefore cannot seek habeas relief." *United States v. Frank*, No. 24-4021, 2024 U.S. App. LEXIS 23182, at *3 (10th Cir. Sep. 12, 2024) (quoting *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013)). A coram nobis writ is a truly "extraordinary" remedy that is limited to "cases presenting circumstances compelling its use 'to achieve justice.'" *United States v. Denedo*, 556 U.S. 904, 911 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). The remedy is sparingly granted. As the United States Supreme Court has explained, "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Smith*, 331 U.S. 469, 475 n.4 (1947)); *see also Guerrero v. United States*, No. 2:23CV192, 2023 U.S. Dist. LEXIS 120196, at *4 (D. Utah July 11, 2023) (quoting the same language from *Carlisle*).

Due to its "exceptional nature," the burden is on the petitioner to satisfy several "stringent criteria" to obtain the writ. *United States v. Carpenter*, 24 F. App'x 899, 905 (10th Cir. 2001). "First, a petitioner must demonstrate that the claim is not procedurally defaulted." *United States v. Garcia*, 676 F. Supp. 3d 1010, 1015 (D.N.M. 2022). "Second, a petitioner must demonstrate that he exercised due diligence in raising the issue and that the information used to challenge the sentence or conviction was not previously available to him." *Id.* (text only). "Third, the writ is only available when other remedies and forms of relief are unavailable or inadequate." *Id*. (text only). "Finally, a petitioner has the burden of asserting a jurisdictional or constitutional error resulting in a complete miscarriage of justice." *Id*. (text only).

I.   **Torres-Mendoza has procedurally defaulted his claim and has not demonstrated his actual innocence.**

Torres-Mendoza first asserts that his guilty plea was not knowing, intelligent, or voluntary because his defense counsel's advice to enter the plea was not based on a thorough investigation of the facts. Doc. 15 at 1; Doc. 25 at 14-15. The problem for Torres-Mendoza is that the "intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998); *see also Frank*, 2024 U.S. App. LEXIS 23182, at *3 ("[T]he writ may not be used to litigate issues that were or could have been raised on direct appeal or in a collateral attack."). As the Tenth Circuit has explained, "a petition for writ of coram nobis must be rejected if the claim was raised or could have been raised on direct appeal, through a [28 U.S.C.] § 2255 motion, or in another other prior collateral attack on the conviction or sentence." *United States v. Miles*, 923 F.3d 798, 804 (10th Cir. 2019). And the parties agree Torres-Mendoza never appealed or otherwise challenged his conviction. Doc. 22 at 5-7; Doc. 25 at 11; Doc. 25-1 at 2 ¶¶ 10, 12. So, Torres-Mendoza's failure to raise a claim on appeal or through a habeas petition results in procedural default.

While an exception to this general rule exists where a petitioner can demonstrate "actual innocence," it is not applicable here. *United States v. Hisey*, 12 F.4th 1231, 1235 (10th Cir. 2021) ("[A] defendant challenging the validity of a guilty plea can overcome a procedural default by showing actual innocence."). To prevail on an actual innocence argument, Torres-Mendoza must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *United States v. Powell*, 159 F.3d 500, 502 (10th Cir. 1998)). But Torres-Mendoza offers nothing more than his self-serving claim that he did not know there was marijuana in his vehicle. *See, e.g.*, Doc. 15 at 2 ("There was no evidence linking him to placing the contraband there or having knowledge of the presence of a hidden compartment."); Doc. 15-1

4

at 29 ¶ 8 ("I did not know there was marijuana concealed in a hidden compartment under the floor[.]"). Such conclusory assertions fall well-short of the burden necessary to sustain a claim of actual innocence, and the Court is left to speculate as to the purpose of his travels, how the marijuana was stashed in his vehicle without his knowledge, and why someone would surreptitiously hide a large quantity of drugs there. *See, e.g.*, *Angus v. United States*, No. 17-CV-583, 2020 U.S. Dist. LEXIS 119838, at *11 (E.D.N.Y. July 8, 2020) ("Petitioner's conclusory assertions [that he had no knowledge of cocaine hidden in his suitcase] are insufficient to justify coram nobis relief."). Without the requisite factual predicate necessary to carry his burden, the Court cannot find Torres-Mendoza was actually innocent. *See Bousley*, 523 U.S. at 623 ("'Actual innocence' means factual innocence, not mere legal insufficiency.").

II.  **Torres-Mendoza was not diligent in seeking collateral review of his conviction and has not provided "sound reasons" that excuse his delay.**

Since a writ of this nature is a "remedy of last resort," *Fleming v. United States*, 146 F.3d 88, 89 (2d Cir. 1998), "a petitioner is not required to challenge his conviction at the earliest opportunity[.]" *Ragbir v. United States*, 950 F.3d 54, 63 (3d Cir. 2020) (text only). Even so, a petitioner—particularly one who has waited years to challenge his conviction after no other remedy is available—must provide "sounds reasons" for his "failure to seek appropriate earlier relief[.]" *Morgan*, 346 U.S. at 512; *accord Garcia*, 676 F. Supp. 3d at 1019.

Torres-Mendoza attempts to do so here. For example, he claims "there was no realistic way" for him to have filed this writ before 2023 because of "life circumstances" that prevented such action. Doc. 25 at 2, 14. As grounds for that contention, Torres-Mendoza asserts that he waited (forty years) to challenge his conviction because he feared it would have jeopardized becoming a lawful permanent resident and the adoption of his son. *See id.* at 11-13; Doc. 25-1 at 3 ¶¶ 13-15, 4 ¶ 17. Again, Torres-Mendoza does not put forward a cogent explanation regarding

5

cause and effect; he does not articulate how appealing his conviction or seeking habeas relief would have undermined his efforts to become a United States citizen or become an adoptive parent. He states only that he believed that to be the case. *See, e.g.*, Doc. 25 at 11-12. Such speculative assumptions are insufficient grounds to warrant the extraordinary relief Torres-Mendoza seeks. *See Ghelichkhani v. United States*, 740 F. App'x 978, 979 (11th Cir. 2018) ("Without presenting sound reasons for failing to seek relief earlier, [the petitioner] is not entitled to relief by writ of coram nobis.").

Further, Torres-Mendoza does not provide an explanation as to why he did not seek post-conviction relief prior to becoming a foster parent in 1995.[1] This omission is puzzling given that Torres-Mendoza claims he believed his counsel's representation was subpar. *See, e.g.*, Doc. 15-1 at 32 ¶ 23 ("[I]t appeared to me that [Esparza's] efforts were focused on mitigating the exposure I was facing, rather than challenging the evidence."); *id.* ¶ 24 ("Esparza did not appear to be focused on vigorously pursuing ways to challenge the admissibility of evidence that the Government would need to prove that I possessed marijuana, or to challenge the credibility of the witnesses on whom the Government would rely in establishing the essential element of knowledge."). Nevertheless, despite the "real damage to him and his family," he did not timely follow up on those concerns. Doc. 25 at 11. He agreed to a plea deal in 1985 and failed to pursue any post-conviction relief for decades. *See United States v. Robinson*, 597 F. App'x 551, 552 (10th Cir. 2015) ("Although we recognize the burdensome collateral consequences of [petitioner]'s conviction, belated recognition of these consequences cannot excuse his delay in challenging the conviction itself."); *see also*

---

[1] Torres-Mendoza's plea agreement did not waive his ability to pursue appellate relief following his guilty plea. Doc. 15-1 at 17-18. *See, e.g.*, *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of post conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims[.]").

6

*Ragbir*, 950 F.3d at 63 ("A defendant seeking to avoid the collateral consequences of a conviction cannot postpone seeking relief until it appears that a collateral consequence is imminent."); *Gonzalez v. United States*, 981 F.3d 845, 852 (11th Cir. 2020) (denying coram nobis relief because the petitioner "waited not only until the possibility of immigration consequences became imminent, but for another 20 months afterward before seeking relief"); *Scates v. United States*, 914 F.2d 249, 249 (4th Cir. 1990) (unpublished table decision) (holding that the petitioner's lack of knowledge of his right to appeal, right to assistance of counsel, and lack of awareness of the adverse consequences of his previous juvenile conviction were not "valid reasons justifying his failure to attack his convictions earlier").

Further, the proverbial sea stack supporting Torres-Mendoza's request has been eroded by the passage of time. As other courts have noted, "the more time that elapses between a party's conviction and his petition for coram nobis, the less likely it becomes that sound reasons exist." *Ragbir*, 950 F.3d at 63; *see also United States v. Wright*, No. 24-11634, 2025 U.S. App. LEXIS 4722, at *6 (11th Cir. Feb. 28, 2025) (denying coram nobis relief, inter alia, because "all of the information [petitioner] relies on stems from many years ago, and he does not explain what reasonable efforts he took to uncover the relevant facts"). And here, as explained above, the Court is unable to find sound reasons for the forty-year period Torres-Mendoza took to present his request and, in turn, find he exercised due diligence.

**III.   Torres-Mendoza has not shown that Esparza's representation was constitutionally deficient.**

Notwithstanding the foregoing conclusions, the Court briefly addresses Torres-Mendoza's ineffective assistance of counsel claim. He argues Esparza was constitutionally ineffective because his advice to enter a guilty plea was based on an insufficient investigation of the facts and limited pre-plea discussions. *See* Doc. 15 at 1, 8-20. To succeed on this claim, Torres-Mendoza must show

7

(1) Esparza's performance was so deficient that he was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Barrett*, 797 F.3d 1207, 1213-14 (10th Cir. 2015).

"A criminal defense lawyer has a duty to conduct reasonable investigations into [his] client's case, which extends to the law as well as the facts." *Heard v. Addison*, 728 F.3d 1170, 1179 (10th Cir. 2013). As the Supreme Court observed in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). With these principles in mind, the Court considers the parties' competing assertions about the depth of Esparza's investigation. In doing so, the Court reviews defense counsel's performance with deference. The Court must consider all the circumstances, making every effort to "eliminate the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Based on the materials provided—including Esparza's affidavit concerning the quality of his representation, Doc. 22-1—Torres-Mendoza has not shown Esparza was deficient or uninformed in his investigation and representation. Esparza's affidavit and his billing records dispel Torres-Mendoza's claims that Esparza minimally reviewed discovery and that the pair never discussed those materials. *Compare* Doc. 15-1 at 29 ¶¶ 9-10 (asserting Esparza did not provide Torres-Mendoza with discovery nor discuss it), *with* Doc. 22-1 at 2 ¶¶ 14-16 (affirming "copies of discovery were given to Mr. Torres-Mendoza for his review and our discussions" and they spent

8

"a total of 6.7 hours . . . meeting in person and/or speaking by phone"); *see* Doc. 15-1 at 23-24 (billing records detailing when Esparza reviewed and discussed discovery with Torres-Mendoza). Had Esparza not communicated with Torres-Mendoza about discovery or trial strategy, the Court might have reached a different conclusion. *See, e.g.*, *Fisher*, 282 F.3d at 1293-96 (concluding the evidence on appeal showed a "singular lack of preparation" after defense counsel did not view the crime scene, file discovery motions, nor review transcripts, and "in effect . . . attempt[ed] to conduct his investigation at trial"). Those are not the facts before the Court, however. The record shows Esparza investigated the facts and communicated and reviewed discovery with his client prior to advising him to enter the plea.[2]

Torres-Mendoza also claims Esparza should have pursued a suppression motion. Doc. 15 at 14-16. Indeed, Esparza was obligated to "research relevant law" and the facts "to make an informed decision whether certain avenues [would] prove fruitful." *Heard*, 728 F.3d at 1179 (quoting *United States v. Demeree,* 108 F. App'x. 602, 605 (10th Cir. 2004)). Esparza's affidavit addresses this requirement. Briefly, he opines that neither the law in 1985 nor the operative facts warranted a motion to suppress. *See* Doc. 22-1 at 3 ¶¶ 19-20. While Esparza's affidavit is admittedly short on detail, it provides some basis for his decision. By contrast, Torres-Mendoza has not provided any substance to support his challenge. He cites no case law from the time of his prosecution suggesting a suppression motion was appropriate and provides no factual foundation to indicate the basis for such a request. Without that information, the Court is unable to assess the reasonableness of Esparza's decision to not pursue suppression issues. In the absence of any factual support or an explanation of the law in 1985, the Court must "strongly presume[ ]" that Esparza's

---

[2] There is nothing in the record to indicate that Torres-Mendoza sought to change counsel because of his concerns regarding the quality of Esparza's communication or representation.

decision not to assert other defenses was made "in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. While he may disagree with Esparza's methods, Torres-Mendoza has not shown that Esparza's legal decision-making and guidance were unreasonable or deficient.

Next, the Court looks to the second *Strickland* prong. In *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), the United States Supreme Court held that a petitioner challenging a guilty plea must show "prejudice" by proving that the constitutionally ineffective representation "affected the outcome of the plea process" by establishing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Here, Torres-Mendoza provides inconsistent statements as to whether he would have plead guilty or proceeded to trial. Initially, he indicates that "there was a possibility of disposition without trial," Doc. 15 at 4 (citing Doc. 15-1 at 14 ¶ 11(b)), while later asserting there was a "reasonable probability" he would have rejected the plea offer and gone to trial had Esparza conducted a more thorough investigation and legal research. Doc. 25 at 14. So, assuming arguendo that Esparza erred, Torres-Mendoza does not show how those mistakes affected the plea processes or convinced him to still plead guilty rather than go to trial.

As the preceding suggests, the Court is skeptical of "bald, post hoc and unsupported statements that [Torres-Mendoza] would have changed his plea absent counsel's errors." *Heard*, 728 F.3d at 1184. Torres-Mendoza has not put forward evidence of how his plea might have been different "if he had received effective assistance of counsel," and he has not provided any objective evidence attendant to the question. *Id.* at 1183-84 (remarking a court's "task is to make a holistic inquiry into all of the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial" (quotation marks omitted)). The petition is lacking any

reference to reports, transcripts, or other investigative documentation. Torres-Mendoza has not detailed exculpatory evidence Esparza should have found (particularly if Torres-Mendoza lacked knowledge of the marijuana stowed in the vehicle), identified grounds for evidentiary challenges, or otherwise detailed the weaknesses of the United States' prosecution, and the intervening decades between his plea and the present motion have made this task nearly impossible. *See, e.g.*, Doc. 22 at 11 n.2 ("[T]he government has not been able to locate the relevant case reports given the passage of nearly forty years.").

In the end, the Court is unable to determine whether Esparza should have either investigated or challenged the United States' case more than he did or whether the discovery of other evidence would have changed Torres-Mendoza's decision to enter the plea or proceed to trial. Therefore, Torres-Mendoza has not satisfied either *Strickland* prong. Consequently, the Court cannot find that his trial counsel was so ineffective that he was subjected to a miscarriage of justice.

## CONCLUSION

Under the facts presented, the Court is compelled to deny Torres-Mendoza the extraordinary remedy he seeks. He has failed to carry his burden because he procedurally defaulted his claim and failed to diligently pursue his available remedies. His petition for writ of coram nobis is hereby denied. Doc. 15.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA